NEW RICHMOND LUMBER COMPANY, Appellant, vs. ROGERS, Respondent.

*March 23 — April 12, 1887.*

*Taxation: Renewal of warrant: Levy.*

1. The time for the collection of the taxes set down in a town tax roll may be extended by an indorsement, in proper form, upon the roll, signed officially by the town supervisors, each acting separately. The statute does not contemplate a meeting and formal action by the board, evidenced by their record kept by the clerk.

2. It is a sufficient levy of a tax warrant upon ponderous property, such as a quantity of oak plank, if the officer goes where it is and takes such control of it as is practicable without removing it, notifies the only person then upon or living near the premises where it is piled that he has levied upon it, requesting him to notify others that he had done so and that it must not be disturbed, and then posts up notices of levy and sale in proper public places.

APPEAL from the Circuit Court for *Polk* County.

The case is sufficiently stated in the opinion.

For the appellant there was a brief by *Baker & Smith,* and oral argument by *A. L. Sanborn* and *Mr. Smith.* They contended, *inter alia,* that there was no valid levy. *Libby v. Murray,* 51 Wis. 371; *Bryant v. Osgood,* 52 N. H. 185. The tax-warrant could not legally be renewed or extended by the separate action of the supervisors. 1 Dillon on Mun. Corp. (2d ed.), secs. 196–8, 379; *Day v. Jersey City,* 19 N. J. Eq. 412; *Butler v. Charlestown,* 7 Gray, 12; *Baldwin v. Canfield,* 26 Minn. 43.

For the respondent there was a brief by *F. M. Nye,* attorney, and *Gregory, Bird & Gregory,* of counsel, and oral argument by *Mr. Bird.*

ORTON, J. This is an action of trover, brought by the appellant against the respondent, for the conversion of about 16,000 feet of lumber belonging to the appellant. The facts

are briefly and substantially as follows: The appellant owned said lumber, and it was piled up at or near its mill-yard in the town of Black Brook, in Polk county. There was on the tax roll of said town, with the usual warrant annexed thereto, a personal property tax of $130.47 against the appellant for the year 1881, which it had neglected to pay after repeated demand. One J. W. Davis was the treasurer of said town, and by virtue of said warrant he levied upon said lumber to satisfy said tax, and on notice he sold said lumber at public auction to the respondent, he having been the highest bidder for the same, and delivered said lumber to him.

A jury having been waived, upon proper findings of fact and conclusions of law the circuit court rendered a judgment against appellant of·dismissal of the action. Due exceptions to the findings were taken by the appellant, and to the refusal of the court to make certain other findings in its favor. The main errors relied upon for the reversal of the judgment are that the said tax warrant was void because not renewed according to law, and the return-day thereof had expired, and that no levy thereof was ever made upon said property.

1. The renewal of the warrant was made by the three supervisors of said town acting and signing the same separately instead of as a board or body. The language of the statute (sec. 1108, R. S.) is that "the town board of any town, the board of trustees of any village, etc., and the common council of any city shall have power to extend the time for the collection of the taxes in such town," etc. "The order extending the time may be in the following or equivalent form, to be indorsed upon the warrant," etc. "We hereby renew this warrant for —— days. Dated this —— day of ——. [Signed] Supervisors of the town of ——, or mayor and clerk of the city of ——, or president and clerk of the village of ——." The indorsement on the

warrant in question was as follows: "It is ordered and determined by the board of supervisors of the town of Black Brook, that we hereby renew this warrant for forty-five days. *Dated this 23d day of January, 1882.* [Signed] A. J. HAGDAHL, AUGUST HANSON, L. S. ANNIS, Supervisors of the town of Black Brook. Attest: J. W. DEAN, Town Clerk." We think this method and form of renewal of the warrant were strictly correct and according to the statute. The form of the order is for the supervisors each to act and sign for himself, as they did in this instance, and as appears to have been customary. This is made authority for the treasurer to act officially after the time has expired. It is indorsed upon the warrant, and becomes a part of it. The formal action of the board, evidenced by their record kept by the clerk, is not contemplated, and such action is too cumbersome and dilatory to meet the exigency of such a case. It will be noticed that the "board of trustees" of a village, and the "common council" of a city, may do this act, and yet the form of the indorsement is, "President and Clerk," "Mayor and Clerk." The form gives these officers the power to act for the board of trustees and the common council in such an emergency. That is, so it would appear; but that question is not here. This indorsement is strictly according to the form given, and is sufficient to renew the warrant. Such a disposition of this question renders it unnecessary to notice the other question as to the validity of the warrant, after the return-day thereof, as authority and justification of the officer, for the levy and sale were within the time of the extension. We do not wish to be understood as holding that when the town board is authorized to act the supervisors can act separately. It is only by this statute *proprio vigore* that such action may be had as to the extension of a tax warrant.

2. Was there a levy made upon the property? The property was white-oak plank, and ponderous, and it was certainly

not necessary to remove it in order to constitute a seizure of it, or to take manual possession of it. It was in the mill-yard of Burkhardt's mill, near the railroad, in two piles about ten rods apart, when the levy was made. There were none of the company about there at the time. There was a man by the name of Johnson living in one of the houses on the premises, and other houses about there were vacant. The officer testified that he went there, and levied upon it and took possession of it, or, at least, as much as he could. He notified that man Johnson that he had levied upon the lumber, and requested him to notify any one concerned that he had levied upon it, and that it must not be disturbed. He at once posted up notices in three public places in the town, and one of them on the door of a vacant store on the premises, and another on a tree at a railroad depot, and the other at Corset's mill. The notices were that he had levied upon the property and that he would sell it, etc. The property was sold to plaintiff in bulk, and he took possession of it and removed it. Was this a sufficient levy? What more could the officer have done? It is answered that he might have notified the company. Such notice would not constitute the levy, it would be only that the officer had already levied upon the property. What person or persons of the company should he have notified, and how far should he travel to give such a notice? None of the company were about there at the time. If any of them had returned to that place, they would have seen the notice posted on the store building. He notified the only person occupying the premises on which the lumber was situated that he had levied. We think that he made as complete a levy and seizure of the property as he was able, or as the law required him, to make, under the circumstances. The officer fulfilled the requirements of a good levy upon such property, as laid down in *Brown v. Pratt*, 4 Wis. 513. "He was in view

of the property, and had it under his control." He did what was held to be sufficient in *Gallagher v. Bishop*, 15 Wis. 276. He levied upon the lumber, and notified the person living on the premises of it.

We can find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.