IN RE SPRING VALLEY MEATS, INC.: DAIRYLAND EQUIPMENT Leasing, INC., Appellant, v. BOHEN, Respondent.

Supreme Court

*No. 77–338. Submitted on briefs January 9, 1980.—Decided March 4, 1980.*
(Also reported in 288 N.W.2d 852.)

---

[6] Similar regulations were upheld in *Olson v. State Conservation Comm.*, *supra* at 487–88.

For the appellant the cause was submitted on the briefs of *Vernon Molbreak, Molbreak Law Office,* of Madison.

For the respondent the cause was submitted on the brief of *William T. Curran* and *Curran, Curran & Hollenbeck* of Mauston.

WILLIAM G. CALLOW, J.   This is an appeal from an order entered in a receivership proceeding.

On April 16 and July 20, 1976, appellant Dairyland Equipment Leasing, Inc. (Dairyland), and Spring Valley Meats, Inc. (Spring Valley), entered into two written agreements denominated as leases. The objects of the

agreements were pieces of equipment to be used by Spring Valley in its meat processing operations.

On May 12, 1977, on the motion of the Bank of Elroy, respondent Donald F. Bohen was appointed Receiver of Spring Valley. Subsequently, Dairyland filed a motion and affidavit with the Monroe County Court requesting the return of the equipment. The affidavit stated that Spring Valley failed and refused to pay to Dairyland the payments due on and after March 1, 1977, and that Spring Valley was in default. Copies of the notice of motion, motion, and affidavit were served on the receiver by mail on June 8, 1977. On June 23, 1977, a verified claim was filed with the Monroe County Court by Dairyland.

Dairyland's motion was returnable on July 5, 1977, at a hearing before the trial court. At the hearing, after proceedings had commenced, counsel for the receiver submitted an affidavit in opposition to the motion. Dairyland made no objection to the untimeliness[1] of the affidavit's filing. Counsel for the receiver also introduced testimony in support of the affidavit. The testimony was introduced to show that the written agreements entered into by Dairyland and Spring Valley were intended only as a partial integration of the parties' agreement and that the agreements were not actually leases but lease-purchase agreements which would give Spring Valley ownership of the equipment upon completion of the payment schedule contained in the agreements. Counsel for Dairyland interposed a parol evidence objection, but immediately withdrew the objection.

On July 18, 1977, the trial court filed a decision which held that the written agreements were not leases but were instead security agreements and that Dairyland was

---

[1] Under sec. 801.15(4), Stats., "opposing affidavits may be served not later than one day before the hearing, unless the court permits them to be served at some other time."

therefore not entitled to the return of the equipment. Findings of fact, conclusions of law, and an order were filed accordingly. Dairyland appeals, arguing (1) that it was error for the trial court to allow at the inception of the hearing the service and filing of the affidavit in opposition to Dairyland's motion, and (2) that testimony regarding an oral agreement was received in violation of the parol evidence rule.

Because Dairyland did not complain about the late service and filing in the trial court, Dairyland cannot do so on appeal. However, we conclude that the testimony relating to an oral agreement between Dairyland and Spring Valley was received in violation of the parol evidence rule. Accordingly, we reverse.

Dairyland argues that the trial court erred in permitting the introduction of the affidavit raising the parol evidence issue as the affidavit was not filed before the deadline imposed by sec. 801.15(4), Stats. This section provides, in part, that:

"When a motion is supported by affidavit, the affidavit shall be served with the motion; and opposing affidavits may be served not later than one day before the hearing, unless the court permits them to be served at some other time."

Sec. 801.15(4) is based on and closely follows its federal counterpart, Federal Rule of Civil Procedure 6(d).[2] Clausen and Lowe, *The New Wisconsin Rules of Civil Procedure: Chapters 801–803*, 59 Marq. L. Rev. 1, 30 (1976). Although Dairyland concedes that trial courts are vested by sec. 801.15(4) with discretion to permit

[2] Fed. R. Civ. P. 6(d) provides in part that "[w]hen a motion is supported by affidavit, the affidavit shall be served with the motion; and, except as otherwise provided in Rule 59(c), opposing affidavits may be served not later than 1 day before the hearing, unless the court permits them to be served at some other time."

service at some later time, Dairyland argues that sec. 801.15(2)(a), Stats.,[3] circumscribes the trial court's discretion; under Dairyland's reading, the trial court may permit affidavits to be served at some other time only upon "just terms" and only where the trial court finds that the opponent's failure to act was the result of excusable neglect.

The receiver asserts that the merits of Dairyland's contention need not be reached, arguing that Dairyland's failure to object to the affidavit precludes assertion of the alleged error on appeal. We agree.

In *Schy v. Susquehanna Corporation,* 419 F.2d 1112 (7th Cir. 1970) *cert. denied* 400 U.S. 826 (1970), the court of appeals held that failure to object to the trial court's allowing affidavits to be filed the day of the hearing on a motion precludes its assertion as error on appeal:

"The plaintiff next complains that the district court erroneously considered affidavits and exhibits filed on the day of the hearing in violation of rule 6(d), Federal Rules of Civil Procedure. The plaintiff did not complain of untimeliness in the trial court, although he did urge the court not to consider the exhibits as evidence. Since the plaintiff did not complain about the late filing in the trial court, he cannot do so on appeal." *Id.* at 1116.

Although no Wisconsin case deals with the effect of a party's failure to object to affidavits received by a trial

[3] Sec. 801.15(2)(a), Stats., provides: "When an act is required to be done at or within a specified time, the court may order the period enlarged but only on motion for cause shown and upon just terms. The 60 day period under s. 801.02 may not be enlarged. If the motion is made after the expiration of the specified time, it shall not be granted unless the court finds that the failure to act was the result of excusable neglect. The order of enlargement shall recite by its terms or by reference to an affidavit in the record the grounds for granting the motion."

court after the deadline for filing had passed,[4] the result reached in the *Schy Case* is consistent with the long-standing rule that alleged errors cannot be raised as a matter of right unless properly objected to in the trial court. *Hein v. Torgeson*, 58 Wis.2d 9, 14, 205 N.W.2d 408 (1973) ; *Arsand v. City of Franklin*, 83 Wis.2d 40, 55, 264 N.W.2d 579 (1978) ; *Murlas Brothers Commodities, Inc. v. Bushman*, 91 Wis.2d 126, 132, 280 N.W.2d 769 (1979) ; *First National Bank of Appleton v. Nennig*, 92 Wis.2d 518, 540–41, 285 N.W.2d 614 (1979). We conclude Dairyland waived any error based on the late service and filing of the affidavit by not objecting at the hearing.

Dairyland's second contention is that evidence presented at the hearing violated the parol evidence rule. The evidence related to an oral agreement between Dairyland and Spring Valley under which Spring Valley would own the equipment at the completion of the payment schedule. The receiver argues that Dairyland cannot raise this issue on appeal, having withdrawn any objections it had to the reception of the testimony. On the merits, the receiver argues that the parol evidence was properly admitted on the question whether the parties intended the written agreements to be the final and complete statement of the agreement between Dairyland and Spring Valley and that, having determined that the parties' agreement was not wholly embodied by the writing, the trial court properly heard testimony as to the oral contract between Dairyland and Spring Valley.

The parol evidence rule can be stated as follows:

---

[4] This court has held, however, that a party who fails to object to an opponent's motion to extend the time to make a motion cannot raise the issue on appeal. *Sambs v. Nowak*, 47 Wis.2d 158, 171, 177 N.W.2d 144 (1970).

"When the parties to a contract embody their agreement in writing and intend the writing to be the final expression of their agreement, the terms of the writing may not be varied or contradicted by evidence of any prior written or oral agreement in the absence of fraud, duress, or mutual mistake."

*Federal Deposit Insurance Corp. v. First Mortgage Investors,* 76 Wis.2d 151, 156, 250 N.W.2d 362 (1977). It is a rule of substantive law and not a rule of evidence. *Id.* at 156; *Conrad Milwaukee Corp. v. Wasilewski,* 30 Wis.2d 481, 488, 141 N.W.2d 240 (1966) ; *Morn v. Schalk,* 14 Wis.2d 307, 315, 111 N.W.2d 80 (1961). "Therefore, even if, without objection, parol evidence of the intention of the parties to a written contract, which conflicts with the express provisions of such contract, gets into the record, the court must disregard it." *Id.* at 315. Thus the merits of Dairyland's contention must be addressed.

■

The receiver argues that the trial court properly admitted parol evidence on the issue of whether the written agreements constituted the final and complete statement of their agreement. This is the issue of "integration." In *Federal Deposit Insurance Corp. v. First Mortgage Investors, supra* at 157, this court stated:

"The real question when a party invokes the parol evidence rule is whether the parties intended the written agreement to be final and complete or 'integrated' or whether they intended any prior agreements to be part of their total agreement. In cases where the writing is incomplete in that only part of the agreement has been reduced to writing, this court has recognized the doctrine of 'partial integration,' that is the parties reduced some provisions to written form and left others unwritten."

If a writing is shown to be only a partial integration of the agreement reached by the parties, it is proper to

consider parol evidence which establishes the full agreement, subject to the limitation that such parol evidence does not conflict with the part that has been integrated in writing. *Federal Deposit Insurance Corp. v. First Mortgage Investors, supra* at 157–58; *Johnson Hill's Press v. Nasco Industries,* 33 Wis.2d 545, 550, 148 N.W. 2d 9 (1967); *Morn v. Schalk, supra* at 314; *Scarne's Challenge, Inc. v. M. D. Orum Co.,* 267 Wis. 134, 140–44, 64 N.W.2d 836 (1954). Thus "[p]arol evidence is always admissible with respect to the issue of integration, that is, parol evidence is admissible to show whether the parties intended to assent to the writing as the final and complete (or partial) statement of their agreement." *Federal Deposit Insurance Corp. v. First Mortgage Investors, supra* at 158.

Dairyland argues, however, that an exception exists to the general rule that parol evidence is admissible with respect to the issue of integration; that evidence of contemporaneous or prior agreements, written or oral, which relate to the same subject matter as the agreement in question is not admissible when the written agreement embodies written terms excluding additional understandings or agreements not contained in the writing, i.e., "merger" clauses. With this much we can agree. Absent claims of duress, fraud, or mutual mistake, a written provision which expressly negatives collateral or antecedent understandings makes the document a complete integration. *Matthew v. American Family Mutual Insurance Co.,* 54 Wis.2d 336, 341–42, 195 N.W.2d 611 (1972); *Mallow v. Hall,* 209 Wis. 426, 432, 245 N.W. 90 (1932); *Edward T. Kelly Co. v. von Zakobiel,* 168 Wis. 579, 581, 171 N.W. 75 (1919); 3 Corbin, *Contracts,* sec. 578, 402–03, 411 (1960 rev.).

Dairyland contends that "merger" clauses are contained in the agreements in question. On the schedule

attached to and incorporated by reference in the April 16 agreement, a handwritten "none" follows the phrase "ADDITIONAL TERMS." On the schedule attached to and incorporated by reference in the July 20 agreement, a hand-drawn line evinces the same meaning. Dairyland argues that these provisions expressly negate the existence of terms not contained in the written agreements. However, an alternative reading of the "merger" clause contained on each of the schedules would restrict the effect of the "additional terms" lines to the terms stated on the schedules and would find them inapplicable to the documents denominated "leases." We believe the latter construction must be adopted, for "[t]he general rule is that ambiguous contracts are to be construed against the maker or drafter." *Bank of Sun Prairie v. Opstein*, 86 Wis.2d 669, 676, 273 N.W.2d 279 (1979); *Garriguenc v. Love*, 67 Wis.2d 130, 135, 226 N.W.2d 414 (1975). Therefore, the trial court's consideration of evidence on the issue of integration was not error. Additionally, the trial court's finding of fact that the written agreements were intended as only partial integrations of their agreements must be accepted, there being no evidence to the contrary. However, reception of parol evidence would be subject to the limitation that the parol evidence received may not conflict with the part of the agreement that has been integrated in writing. This limitation was not observed.

Unless the parties' complete agreement contains provisions, either oral or written, for the vesting of title to the goods in their user, the parties' agreement must be considered a true lease as opposed to a conditional sales contract or a chattel mortgage disguised as a lease. *Appliance Buyers Credit Corp. v. Crivello*, 43 Wis.2d 241, 250, 168 N.W.2d 892 (1969).[5] The receiver sought to

---

[5] Although *Appliance Buyers Credit Corp. v. Crivello*, 43 Wis.2d 241, 168 N.W.2d 892 (1969), was decided under the Uniform Con-

establish such provisions by use of parol evidence; Spring Valley's directors testified that, under the oral provisions of the Dairyland-Spring Valley agreements, Spring Valley would own the equipment free and clear upon completion of the payment schedules contained in the written agreement. However, the agreements provide that "[t]itle to all equipment shall remain in Lessor" and that "the equipment shall be returned to the lessor in the same appearance and condition as when received." The directors' testimony stands in conflict with that part of the parties' agreement which had been integrated in writing. Thus, even if testimony was permitted on the issue of integration, the parol evidence rule still barred the directors' testimony as to the nature of their agreement.[6] Accordingly, there is no evidence to support the trial court's conclusion that the agreements constituted anything other than leases.

*By the Court.*—Order reversed and cause remanded for further proceedings not inconsistent with this opinion.

ditional Sales Act (UCSA), formerly Chapter 122 of the Wisconsin Statutes, it is widely accepted that Uniform Commercial Code Section 1–201(37) [sec. 401.201(37), Stats.], which defines what constitutes a security interest under the code, should be interpreted with reference to pre-Code conditional sales law. 1 Gilmore, *Security Interests in Personal Property,* viii (1965); Coogan, *Leases of Equipment and Some Other Unconventional Security Devices: An Analysis of UCC Section 1201(37) and Article 9,* 1973 Duke L. J. 909, 929–30, 932–42, 954–73.

[6] In a case decided under the UCSA, this court has held that a contract between a machine company and a customer which expressly reserves title to certain machinery in the company is to be construed as a lease or license of the machinery and not a conditional sale. *United Shoe Repairing Machine Co. v. Asoumanakis,* 172 Wis. 102, 107, 178 N.W. 312 (1920).