## COBB STATE BANK, Plaintiff-Appellant,

### v.

## Russell NELSON, Defendant-Respondent,

## Frederick H. McKELLIPS, Defendant.

Court of Appeals

*No. 86–1444. Submitted on briefs April 17, 1987.—Decided July 28, 1987.*
(Also reported in 413 N.W.2d 644.)

For plaintiff-appellant, there were briefs by *Bruce J. Hoesly* of *Kinney, Urban, Schrader, Bromley & Kussmaul,* Lancaster.

For defendant-respondent, there was a brief by *Hugh R. Jones* and *Thomas M. Landowski* of *Collins, Beatty & Krekeler, S.C.,* Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Cobb State Bank appeals a judgment of the circuit court for Iowa County that reduced its claim against its debtor, Russell Nelson, by the sum of $31,191. The bank maintains that it had already

credited that sum to Nelson's outstanding account on a previous note.

The bank claims that the trial court erroneously applied the parol evidence rule and erroneously concluded that even considering the parol evidence, the bank failed to establish the disputed portion of its claim to the required degree of certainty. Because the parol evidence rule does not bar the bank's proof and because undisputed evidence conclusively shows that the bank credited the $31,191 payment to a prior loan, we reverse and remand for entry of judgment for the full amount claimed.[1]

This matter was tried to the court. Nelson and another[2] executed an original note with a maturity date of January 5, 1981. They also signed a contemporaneous security agreement, describing certain cattle as collateral. The original note was paid, partly by periodic sales of some of the cattle, and then by execution of a $45,280.28 renewal note whose date is at issue. The parties defaulted on the renewal note when, partly as a result of high feed costs and disease, the cattle sales eventually failed to cover the loan.

The face of the renewal note bears a date of January 5, 1985. The trial court excluded testimony from a bank officer, William Winter, that the renewal note was backdated by about a week to January 5 to correspond to the maturity date of the original note, and that this was a customary practice in the banking industry. Winter's testimony was offered to corrobo-

---

[1]Because the bank prevails, we need not address its claim that the trial court abused its discretion when it allowed Nelson to reopen a default judgment originally entered against him.

[2]Frederick H. McKellips, an original defendant against whom judgment was also rendered, is not a party to this appeal.

rate evidence from the bank records. Those records established that $31,191, the net proceeds from a January 7 cattle sale, was credited toward Nelson's debt and that the renewal note was the balance due after the credit was applied. It is undisputed that $31,191 was paid to the bank by a check dated January 7, 1981.

In a memorandum decision, the court excluded Winter's testimony holding that it violated the parol evidence rule. Describing the bank records as internal bank documents, the court also disregarded them because they were neither discussed with nor shown to Nelson prior to the lawsuit.

Contrary to Nelson's assertion, the trial court did not reject either Winter's testimony or the bank records on credibility grounds. Rather, this evidence was excluded upon an erroneous view of the law. This distinction is critical because weight and credibility are matters for the trial court and not this court. *Klienstick v. Daleiden,* 71 Wis. 2d 432, 442, 238 N.W.2d 714, 719 (1976). Conversely, this court must decide questions of law without deference to the trial court's decision. *Ball v. District No. 4 Area Bd. of VTAE,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

Nelson, in support of his contention that Winter's testimony was rejected on credibility grounds, cites a statement in the court's opinion: "Even if this evidence was left in the case, it is inconclusive, since Winter could give no definite date of execution." The only reasonable interpretation of the court's comment is that Winter's testimony, uncertain as it was to the precise execution date, by itself and without the bank records, would not prove the bank's claim. However,

as will be shown, the bank records were improperly disregarded and therefore Winter's testimony did not stand alone.

As to the first issue, in advocating the exclusion of Winter's testimony under the parol evidence rule, Nelson relies upon sec. 402.202, Stats., and several cases from other jurisdictions decided thereunder.[3] Nelson maintains that sec. 402.202 is merely a codification of a common-law "rule of evidence." Nelson's contention is improper for two reasons. First, it is ch. 403, Stats., that part of the Uniform Commercial Code pertaining to commercial paper, not ch. 402, pertaining to transactions in goods, that relates to a promissory note. Further, the parol evidence rule is not a rule of evidence at all, but is universally recognized as a substantive rule of contract law. *Dairyland Equip. Leasing, Inc. v. Bohen,* 94 Wis. 2d 600, 607, 288 N.W.2d 852, 855 (1980); *see also* Corbin, Contracts, sec. 573 (1960).

The writing in dispute is a "note." Section 403.104(2)(d), Stats. If such an instrument is dated, the

---

[3]Section 402.202, Stats., provides:

Final written expression; parol or extrinsic evidence. Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

(1) By course of dealing or usage of trade (s. 401.205) or by course of performance (s. 402.208);

(2) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

6

date is presumed to be correct. Section 403.114(3), Stats. "Presumed," when used in the U.C.C., means that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced that would support a contrary finding. Section 401.201(31), Stats. The code therefore anticipates conflicting evidence bearing on the correct date of commercial paper.

Apart from the specific provisions of the U.C.C., established principles of substantive contract law would also admit Winter's testimony. "Unless displaced by particular provisions of the code, the common law principles of law and equity supplement the code." *Christensen v. Equity Coop Livestock Sale Ass'n,* 134 Wis. 2d 300, 304, 396 N.W.2d 762, 763 (Ct. App. 1986). Parol evidence is admissible "to show whether the parties intended to assent to the writing as the final and complete (or partial) statement of their agreement." *Dairyland Equip. Leasing,* 94 Wis. 2d at 608, 288 N.W.2d at 855 (quoting *FDIC v. First Mtg. Investors,* 76 Wis. 2d 151, 158, 250 N.W.2d 362, 366 (1977)). The parol evidence rule has no applicability unless the parties have agreed in a written contract on specific terms and intended the writing to be the final expression of their agreement. *Dairyland Equip.,* 94 Wis. 2d at 607, 288 N.W.2d at 855. The parol evidence rule, like the dead man's statute, is an exclusionary rule not favored by the law. Its application is limited and its use narrow. *See Kramer v. Alpine Valley Resort, Inc.,* 108 Wis. 2d 417, 426, 321 N.W.2d 293, 297 (1982).

Neither the note nor the related farm security agreement states that these writings were intended to

be the final expression of the parties' agreement. More particularly, in regard to the significance of the date, the note was expressly payable on March 6, 1981, and therefore the January 5 date had no bearing on its payment date. Nowhere in the written evidence did the parties agree to credit payments made after January 5 to the renewal note. Parol evidence was therefore admissible to show whether the $31,191 was in fact paid before the note was executed and to explain the apparent discrepancy between the bank ledger entries and the date of the note. Winter's testimony on this issue was improperly excluded.

We turn next to the documentary evidence rejected by the trial court. The Wisconsin Rules of Evidence, chs. 901 to 911, Stats., do not exclude business records even if they are "internal records." Nor does the evidence code require disclosure of a business record as a condition precedent to its admission.[4]

Section 908.03(6), Stats., admits business records if a foundation is laid, even though the record is hearsay. Although rejected as proof in its memorandum decision, the court did admit the records into evidence as exhibits at trial, ostensibly in reliance on sec. 908.03(6). Just as Winter's testimony was not rejected on credibility grounds, neither were the bank records found not credible. Rather, they were rejected solely because they had not been shown to Nelson.

---

[4]Section 409.208(1) and (2), Stats., part of ch. 409 of the U.C.C. dealing with secured transactions, provides a method whereby a debtor may demand and receive a statement of account from the secured party. No assertion is made that this section was violated, nor do the penalties for violation exclude use of the records under the circumstances of this case.

Absent a finding that the records were in error, they were entitled to proper consideration. The combination of Winter's testimony and the bank records, the latter being essentially unchallenged, bring into play the following principle: "Positive uncontradicted testimony as to the existence of some fact, or the happening of some event, cannot be disregarded by a court or jury in the absence of something in the case which discredits the same or renders it against the reasonable probabilities." *Thiel v. Damrau,* 268 Wis. 76, 85, 66 N.W.2d 747, 752 (1954).

Nelson, perhaps understandably bitter because he cosigned the original note as a gesture of friendship with no expectation of profit, presented various defenses at trial that were resolved by the court in favor of the bank. The court did not find, nor does Nelson assert, that the bank records were false or that he never received credit for the amount paid. To the contrary, apart from the January 5 date on the note, all the evidence points to only one conclusion: to ignore the records is to grant Nelson double credit for a single payment. The bank is therefore entitled to judgment for its full claim.

*By the Court.*—Judgment reversed and cause remanded for entry of judgment for the full amount of the claim.